**Mildred L. SASS**

v.

**AMTRUST BANK, Ticor Title Insurance Company, Fidelity Closing Services, LLC, and Ellery Crissman.**

**Appeal of Nationstar Mortgage, LLC.**

**Nationstar Mortgage, LLC (as Successor in Interest to AmTrust Bank), Appellant**

v.

**Mildred L. Sass.**

Superior Court of Pennsylvania.

Argued May 6, 2013.

Filed Aug. 8, 2013.

---

· Martin C. Bryce, Jr., Philadelphia, for appellant.

Andrew P. Gates, Clearfield, for appellee.

BEFORE: BENDER, J, GANTMAN, J. and OLSON, J.

OPINION BY BENDER, J.:

These consolidated appeals call upon the Court to address the scope and application of the federal Financial Institutions Reformation, Recovery, and Enforcement Act (FIRREA) to declaratory judgment and *in rem* mortgage foreclosure actions in state court. Nationstar Mortgage, LLC, as successor in interest to AmTrust Bank, appeals an award of summary judgment in favor of Mildred Sass, which invalidated the mortgage and promissory note on Sass's residence, dismissed Nationstar's mortgage foreclosure action, and released Sass from further liability. Nationstar contends that the trial court acted without lawful authority as FIRREA deprives all courts of subject matter jurisdiction to impose liability on a successor financial institution for pre-assignment conduct by the predecessor institution without exhaustion of administrative remedies before the Federal Deposit Insurance Corporation (FDIC). Upon review, we agree with Nationstar's assertion that FIRREA precludes Sass's action at 1066 WDA 2012

(Trial Court Docket No. 2009–1519–CD), inasmuch as it makes an affirmative claim for declaratory judgment beyond the trial court's subject matter jurisdiction. We conclude as well, however, that the trial court acted fully in accord with FIRREA at 1067 WDA 2012 (Trial Court Docket No. 2009–795–CD), as the remedies it granted derived not from a claim against the assets of Nationstar or AmTrust, but from affirmative defenses Sass raised in New Matter. Accordingly, we vacate the trial court's order at 1066 WDA 2012, and dismiss the appeal from the companion order at 1067 WDA 2012.

AmTrust, then still in operation, commenced the first of the related actions in the Court of Common Pleas in Clearfield County seeking an *in rem* judgment of mortgage foreclosure against the home of Mildred Sass. Approximately one year before, Sass had attempted to refinance the home with AmTrust and anticipated using the proceeds of $115,000 to repay her existing mortgage note and consolidate other obligations. Nevertheless, Sass determined that an employee of closing agent Fidelity Closing Services, LLC, had misappropriated $77,807.28 of the loan proceeds and absconded, leaving her with limited recourse.

Thereafter, Sass declined to repay the mortgage loan to AmTrust, prompting its commencement of the foreclosure action at 2009–795–CD (*Sass I*). In her answer to AmTrust's Complaint, Sass denied physically or electronically signing a promissory note in favor of AmTrust or authorizing anyone to do so on her behalf. Further, in her New Matter, she alleged the closing agent's misappropriation of the loan proceeds and that AmTrust had violated the Truth in Lending Act (TILA) by failing to include certain disclosures in her documents at closing, and had similarly violated the federal Real Estate Settlement Proce-

dures Act (RESPA). Accordingly, she sought rescission of the mortgage as well as a set-off or credit to her loan balance for sums attributable to the closing agent's malfeasance.

Following AmTrust's commencement of the mortgage foreclosure action, Sass brought the companion action at docket no. 2009–1519–CD (*Sass II*) seeking a declaratory judgment that the mortgage was void *ab initio* as a result of the closing agent's misappropriation of loan proceeds. Subsequently, the FDIC placed AmTrust into receivership and transferred the servicing rights to Sass's mortgage loan to Nationstar, whereupon Nationstar substituted itself as plaintiff in *Sass I*.

Following the closing of the pleadings in *Sass I* and *Sass II*, Sass served first, counsel for AmTrust and later, counsel for Nationstar, with interrogatories and requests for production of documents on October 26, 2009. When, after more than one and one-half years, opposing counsel had not responded to her requests, Sass filed a motion to compel followed by a motion for sanctions, on May 12, 2011. After a hearing, the trial court ordered AmTrust "to fully and completely answer each and every of Sass's Interrogatories and to provide Sass's attorney with all documents and written material identified in Sass's Request for Production and/or otherwise identified by AmTrust in its answers to Sass's Interrogatories within thirty (30) days of the date of the Court's Order directing it to do so." R.R. at 175a–178a. Sass's Interrogatories requested, *inter alia*, that AmTrust

> please list and identify all mortgage loan disclosures provided to Mildred L. Sass with reference to the mortgage transaction which is the basis of this mortgage foreclosure action. This is specifically to include all disclosures, good faith estimates, etc. required by the Truth in

Lending Act (15 U.S.C. § 1635) and by the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq*) and Regulation X, (24 C.F.R. Part 3500).

R.R. at 156a.

In addition, the order warned that if AmTrust failed to respond to 13 of Sass's requests for admissions they would be deemed admitted. Included among those deemed admissions were the following:

> (xii) At no time on or prior to November 26, 2008 did AmTrust Bank and Fidelity Closing Services, LLC provide Mildred L. Sass with a "notice of Right to Cancel" as mandated by 15 U.S.C. § 1635; and
>
> (xiii) At no time on or prior to November 26, 2008 did AmTrust Bank of Fidelity Closing Services, LLC provide Mildred L. Sass with all Truth in Lending Disclosures mandated by 15 U.S.C. § 1605, et seq.

*Id.* at 177a. Nevertheless, when counsel, now acting on behalf of Nationstar, provided the responses on July 8, 2011, he responded only generally, prompting Sass to file the motions for summary judgment at issue.

On October 7, 2011, Sass moved for summary judgment on the claims and defenses of her New Matter in *Sass I* and her declaratory judgment action in *Sass II*. Significantly, Nationstar failed to respond to either motion despite the trial court's order that it do so, and failed as well to appear for oral argument convened on December 8, 2011. Therefore, and in view of the deemed admissions caused by AmTrust/Nationstar's failure to comply with discovery, the trial court granted summary judgment in both *Sass I* and *Sass II*, and the trial court's prothonotary served Nationstar with a certified copy of the order. Not until some 19 days later, however, on December 27, 2011, did Nationstar file any manner of response, in the form of a motion for reconsideration in *Sass I* that averred it had not received the original motion for summary judgment.[1] Nevertheless, the trial court did not grant reconsideration and Nationstar's thirty-day appeal window closed on January 9, 2012, without the filing of a notice of appeal. The trial court denied the motion by order of February 17, 2012, and noted further that inasmuch as the court had not granted reconsideration prior to the expiration of the appeal period and Nationstar had not appealed, the motion for reconsideration had been rendered moot. Subsequently, however, on March 13, 2012, Nationstar filed a second motion in *Sass I*, this one styled "Plaintiff's Motion to Strike, Open, Vacate and/or Reconsider the February 17, 2012 Order Denying Motion for Reconsideration as Moot, and to Grant Reconsideration of the Order Entering Summary Judgment in Favor of Defendant." In this second reconsideration motion, Nationstar renewed its assertion that it had not been served with the summary judgment motion, and opined that the matter constituted a breakdown in the operation of the court. Notwithstanding the scope of that averment, however, Nationstar provided no documentation in support of its claim and the trial court denied the motion.

Thereafter, Nationstar obtained new counsel on June 25, 2012, and within one week, counsel again petitioned the trial court for relief, this time through a Motion

---

1. Nationstar eventually posed this same explanation in *Sass II* but waited until March 22, 2012, to do so, some 104 days after the trial court had awarded summary judgment. Significantly, counsel admitted in that third reconsideration motion that Nationstar had received the trial court's order granting summary judgment within one week of its entry, on December 15, 2011.

to Dismiss or Vacate Orders in both *Sass I* and *Sass II*. In that third reconsideration motion, Nationstar raised for the first time that the court was deprived of jurisdiction by the prohibition of FIRREA upon actions against a successor institution for the pre-assignment conduct of its predecessor. Again, however, the trial court denied the motion, prompting Nationstar to file these consolidated appeals on July 9, 2012, some 213 days after the trial court's entry of summary judgment.

Inasmuch as these appeals are consolidated, Nationstar filed a single Brief for Appellant stating the following questions for our review:

1. Whether the federal Financial Institutions Reformation, Recovery and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821(d), deprived the trial court of subject matter jurisdiction to consider the Claims, New Matter and New Matter Counterclaims of Mildred L. Sass ("Sass")?

2. Whether the trial court erred in granting Sass's Motion for Summary Judgment?

3. Whether the trial court erred in declaring the Motions for Reconsideration filed by Nationstar Mortgage, LLC ("Nationstar") moot?

4. Whether the trial court erred in denying Nationstar's Motion to Strike, Open, Vacate and/or Reconsider its February 17, 2012 Order[?]

Brief for Appellant Nationstar Mortgage, LLC, at 5.

In response, Sass has provided a Counterstatement of the Questions Involved as follows:

1. Should Nationstar's Consolidated Appeals of Orders of the trial court entered on December 8, 2011, February 17, 2012 and July 11, 2012[sic] be quashed and/or dismissed as being untimely under Pa.R.A.P. 903(a)? [2]

2. Was it proper for the trial court to grant Sass's Motions for Summary Judgment in both Sass I and/or Sass II?

3. Did the [FIRREA], 12 U.S.C. § 1821(d), deprive the trial court of subject matter jurisdiction to consider Sass's "affirmative defenses" and other defenses raised in a mortgage foreclosure action, including:

(i) her right of recission which she exercised under 15 U.S.C. § 1635(a), (b), and (f); and/or

(ii) that no binding and enforceable mortgage obligation was ever created between Sass and AmTrust Bank ("mortgagee") when it has been conclusively established that the mortgagee's chosen and authorized settlement agent, absconded with 67.66% of the mortgage proceeds, and Sass did not receive her bargained for consideration; and/or

(iii) simply because the mortgagee later became a "failed bank" and was otherwise taken over by the [FDIC] as Receiver?

Brief for Appellee, Mildred Sass, at 13.

Nationstar's challenges in both of the consolidated cases impugn the trial court's award of summary judgment.

The Pennsylvania Rules of Civil Procedure allow disposition of a case on summary judgment only where the record

---

**2.** The record suggests that Sass is mistaken in her reference to a July 11, 2012 order, and that the order in question was entered on June 11, 2012. That order denied Nationstar's motion to strike, open, vacate, or reconsider the order of February 17, 2012, which had, in turn, denied Nationstar's motion for reconsideration of the order of December 8, 2011, that granted Sass's motions for summary judgment.

demonstrates an absence of factual questions material to the elements of the disputed causes of action. We have held accordingly that:

> "[A] proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense [.]" Under [Civil] Rule 1035.2(2), "if a defendant is the moving party, he may make the showing necessary to support the entrance of summary judgment by pointing to materials which indicate that the plaintiff is unable to satisfy an element of his cause of action." Correspondingly, "[t]he non-moving party must adduce sufficient evidence on an issue essential to its case and on which it bears the burden of proof such that a jury could return a verdict favorable to the non-moving party."

*Basile v. H & R Block, Inc.*, 777 A.2d 95, 100–01 (Pa.Super.2001) (citations omitted). Thus, a plaintiff's failure to adduce evidence to substantiate any element of his cause of action entitles the defendant to summary judgment as a matter of law. *See Ertel v. Patriot–News Co.*, 544 Pa. 93, 674 A.2d 1038, 1042 (1996). As with all questions of law, our scope of review of a trial court's order granting summary judgment is plenary. *See id.* at 1041. Our standard of review is the same as that of the trial court; we must review the record in the light most favorable to the non-moving party granting [him] the benefit of all reasonable inferences and resolving all doubts in [his] favor. *See id.* We will reverse the court's order only where the appellant ... demonstrates that the court abused its discretion or committed legal error. *See Basile*, 777 A.2d at 101.

*Montagazzi v. Crisci*, 994 A.2d 626, 629–630 (Pa.Super.2010) (quoting *Lewis v. Philadelphia Newspapers, Inc.*, 833 A.2d 185, 190 (Pa.Super.2003)).

▇ In support of its claims of error, Nationstar renews its assertion that FIRREA deprives the trial court of jurisdiction to address any aspect of the two cases and that consequently, the untimeliness of its consolidated appeals is of no moment. Brief for Appellant at 17. Nationstar appears to argue broadly that under FIRREA, a successor institution assumes only the assets of its failed predecessor and that, consequently, the purpose of FIRREA to assure economic stability in the wake of bank failures is met only if the successor is insulated from loss occasioned by any of its predecessor's conduct. To sustain that proposition, Nationstar relies on the explanation of the Third Circuit Court of Appeals that FIRREA

> bars jurisdiction over four categories of actions: (1) claims for payment from assets of any depository institution for which the [Resolution Trust Corporation] has been appointed receiver; (2) actions for payment from assets of such depository institution; (3) actions seeking a determination of rights with respect to assets of such depository institution; and (4) a claim relating to any act or omission of such institution or the ... receiver.

*Id.* at 18 (quoting *National Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 393 (3rd Cir.1994)) (emphasis in Appellant's brief removed). Although we recognize the applicability of this *City Savings* decision as persuasive authority of FIRREA's reach in this case, we find Nationstar's argument tendentious and not entirely candid in its analysis of applicable case law.

In *City Savings*, the Court of Appeals did recognize that an action for declarato-

ry judgment the plaintiff commenced against the successor to a failed savings and loan institution did constitute an "action[ ] seeking a determination of rights with respect to assets of such depository institution." *See City Sav.*, 28 F.3d at 393. Although the court also acknowledged the potential for constitutional limitations on the statute's reach if its mandate were to preclude a plaintiff's enforcement of property rights through judicial or administrative review, *see id.* at 391–92, it ultimately deferred those considerations to a future case that might focus on them more directly. *See id.* The Court held accordingly that "the language contained in § 1821(d)(13)(D) barring 'any action seeking a determination of rights' is not limited in its application to actions brought by creditors; it applies to debtors as well, and applies regardless of whether the action is asserting a right to payment." *Id.* at 392. Consequently, the Court of Appeals concluded that the district court was deprived by FIRREA of jurisdiction over the claims brought in the plaintiff's declaratory judgment action as, by their nature, such actions do seek "a determination of rights." We are convinced, accordingly, that *Sass II*, comprised of a claim for declaratory judgment is barred by FIRREA and may not proceed. Hence, the trial court's award of summary judgment in that action is a nullity.

■ Of greater consequence in this case, however, is the Court's holding that defenses and affirmative defenses, as Sass raised in *Sass I* to Nationstar's mortgage foreclosure action, do not fall within the jurisdictional limitation of FIRREA and therefore are not foreclosed by its provisions. The Court's explanation is exceptionally clear:

> We think it is plain enough that a defense or an affirmative defense is neither an "action" nor a "claim," but rath-

er is a *response* to an action or a claim, and that therefore defenses and affirmative defenses do not fall under any of the above four categories of actions. In the interest of clarity, we explain our position in detail.

Black's Law Dictionary defines "defense," in relevant part, as follows:

> That which is offered and alleged by the party proceeded against in an action or suit, as a reason in law or fact why the plaintiff should not recover or establish what he seeks. That which is put forward to diminish plaintiff's cause of action or defeat recovery. . . .
>
> \* \* \* \*
>
> *A response to the claims of the other party,* setting forth reasons why the claims should not be granted. The defense may be as simple as a flat denial of the other party's factual allegations or may involve entirely new factual allegations. In the latter situation, the defense is an *affirmative defense.*

BLACK'S LAW DICTIONARY 419 (6th ed. 1990) (emphasis added). "Affirmative defense" is defined in more detail as follows:

> In pleading, matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it. *A response to a plaintiff's claim* which attacks the plaintiff's [legal] right to bring an action, as opposed to attacking the truth of claim. Under the Fed. Rules of Civil Procedure, and also under most state Rules, all affirmative defenses must be raised in the responsive pleading (answer). . . .

*Id.* at 60 (emphasis added). We have stated above that an action means "a lawsuit brought in a court." *Id.* at 28. In the above discussion we also stated, borrowing from the Bankruptcy Code, that as used in § 1821(d) the term

"claim" essentially means "an action asserting a right to payment."

With the aid of these definitions, it is clear that a defense or affirmative defense is not properly called an "action" or a "claim" but is rather a *response* to an action or a claim. When a lawyer files a responsive pleading to an action or claim, she does not say that she is bringing an action or filing a claim; instead, she says that she is answering, responding to, or defending against an action. The jurisdictional bar contained in § 1821(d)(13)(D) therefore does not apply to defenses or affirmative defenses.

*City Savings*, 28 F.3d at 393.

We find the foregoing analysis of the language of section 1821(d) most persuasive. Clearly, the process of dispute resolution emanating from a mortgage creditor's claim must allow for a full measure of authority in any court to reconcile the competing interests of the parties in the value of the property that secures the loan. The suggestion that one who assumes the loan pursuant to FIRREA should be insulated from defenses that would compromise the value of the loan is simply untenable. Hence, as the Court of Appeals recognized, the language of FIRREA *does not* limit the jurisdiction of a court to entertain such defenses and, if appropriate, to invalidate the mortgage entirely in response to them. Consequently, the trial court's action here in granting rescission in response to Sass's defense and affirmative defenses does not run afoul of the jurisdictional bar of FIRREA.

The same is not true, however, of any counterclaims Sass may have designated. [S]uch counterclaims would fall under § 1821(d)(13)(D)'s jurisdictional bar, because a counterclaim *is* a "claim." Black's Law Dictionary defines counterclaim as "[a] claim presented by a defen-

dant in opposition to or deduction from the claim of the plaintiff." BLACK'S LAW DICTIONARY 349 (6th ed. 1990). Therefore, unless counterclaims were properly submitted to the administrative claims procedure of FIRREA, they would be subject to the jurisdictional bar of § 1821(d)(13)(D).

*Id.* at 394.

Courts are well suited to determine whether the merits of a stated defense, affirmative defense, or counterclaim bring it within the ambit of the jurisdictional bar of the FIRREA, and may not premise a determination merely on the label a pleading may carry. *See id.* Thus, "[c]ourts should not allow parties to avoid the procedural bar of § 1821(d)(13)(D) by simply labeling what is actually a counterclaim as a defense or affirmative defense." *Id.* Similarly, courts must retain a healthy degree of skepticism in applying the bar to assertions pled as defenses merely because their application would compromise the value of assets assumed by a successor bank under FIRREA. "[A] claim (or a counterclaim) is essentially an action which asserts a right to payment." *Id.* Consequently, the court must consider whether the disputed assertion of a party's pleading stems from the desire to establish a right to payment and collect on the resulting debt, or from an explanation of why the debt is not valid or collectible.

Consistent with this rational, courts have generally accepted the proposition that a defense of rescission is an affirmative defense—not a counterclaim—as it does not seek payment of any sort, but operates to invalidate a contract based on circumstances that render enforcement unlawful. *See id.* at 394, n. 26. Although the net effect of such a defense in reducing sums payable by a defendant may be equivalent to that wrought by a counterclaim for damages, the mechanism by

which that effect is achieved is entirely distinct. While a counterclaim naturally sets off damages awarded to its claimant against those due on the underlying claim, the affirmative defense of rescission more directly nullifies the contractual basis for the claim. Thus, we need not hesitate in concluding that Sass's assertion of an entitlement to rescission of the mortgage contract is an affirmative defense beyond the reach of section 1821(d)'s jurisdictional bar and subject fully to the jurisdiction of the trial court. That defense makes no claim on Nationstar for an award of damages, but merely posits that based on a multiplicity of circumstances, including the conduct of the closing agent in absconding with the proceeds of the loan and the failure of AmTrust to comply with various statutory prescriptions at closing, the terms of the contract cannot be enforced. Thus, the defenses and affirmative defenses so characterized in *Sass I* are exactly that and, as such, are not subject to the jurisdictional bar of section 1821(d).[3] We conclude accordingly, that while the declaratory judgment action Sass commenced in *Sass II* is plainly barred by FIRREA, Sass's attempts, by way of defense and affirmative defense to nullify, rescind, or otherwise invalidate the contract in response to Nationstar's mortgage foreclosure action in *Sass I* are not.

Having determined that the trial court's disposition in *Sass I* is not barred by FIRREA, we conclude as well that the court's award of summary judgment is not subject to further litigation, as Nationstar's appeal is palpably untimely. The docket establishes that although the court granted Sass's summary judgment motion on December 8, 2011, Nationstar failed to file a notice of appeal to this Court until July 9, 2012, some 213 days after entry of the original appealable order. In view of the 30–day appeal window specified by Pa. R.A.P. 903(a), Nationstar's multiple motions for reconsideration offer no basis for a contrary conclusion. *See Cheathem v. Temple University Hosp.*, 743 A.2d 518, 520 (Pa.Super.1999) (citing *Moore v. Moore*, 535 Pa. 18, 634 A.2d 163, 167 (1993)) ("It is by now well known that the mere filing of a petition requesting reconsideration of a final order of the trial court does not toll the normal 30–day period for appeal from the final order."). The Rules of Appellate Procedure recognize a single method to toll the appeal period which counsel throughout this Commonwealth have consummated through decades of practice: "[T]he 30–day period may only be tolled if that court enters an order 'expressly granting' reconsideration within 30 days of the final order." *See Cheathem*, 743 A.2d at 520 (quoting Pa.R.A.P. 1701(b)(3)(i), (ii) and Note). "There is no exception to this Rule, which identifies the only form of stay allowed. A customary order and rule to show cause fixing a briefing schedule and/or hearing date, or any other order except for one "expressly granting" reconsideration, is inadequate." *Id.* at 520–21 (citing *Valentine v. Wroten*, 397 Pa.Super. 526, 580 A.2d 757 (1990)). Consequently, a party seeking reconsideration must file the notice of appeal simultaneously to assure the availability of appellate review should the trial court deny the petition or fail to grant it "expressly" within that critical 30–day window. *See id.*

In this instance, the trial court did not "expressly grant" reconsideration within the applicable 30–day period and subse-

---

**3.** Nationstar's suggestion that FIRREA constrained Sass to present her defenses and affirmative defenses to the FDIC for regulatory resolution is simply wrong—and obviously motivated more by that party's financial interest than by an *bona fide* reading of either the statute or the *City Savings* decision, on which Nationstar purports to rely.

quently denied the motion for reconsideration outright. Complicating an already tenuous procedural position, Nationstar failed to file its notice of appeal within the required period and, in that omission, forfeited its ability to obtain appellate review. *See id.* Our Courts have reaffirmed on countless occasions that timeliness is jurisdictional, as an untimely appeal divests this Court of jurisdiction to hear the merits of the case. *State Farm Fire and Cas. Co. v. Craley ex rel. Estate of Craley,* 784 A.2d 781, 785 (Pa.Super.2001) (*en banc*) (*overruled on other grounds, sub nom., Motorists Mut. Ins. Co. v. Pinkerton,* 574 Pa. 333, 830 A.2d 958 (2003)). Further, we are unable to deem an appeal timely except under the narrowest of circumstances in which counsel for the offending party can establish either a breakdown in the operations of the judicial support system or extenuating circumstances that rendered him incapable of filing the necessary notice. In this instance, Nationstar has made no cognizable attempt to establish either circumstance and the record offers no suggestion of factors to the contrary. We conclude accordingly that Nationstar is not entitled to relief in *Sass I,* as the untimeliness of its appeal at 1067 WDA 2012 effectively forfeits its right to appeal.

In accordance with the foregoing analysis, we hereby vacate the order granting summary judgment in *Sass II* (1066 WDA 2012), as FIRREA effectively deprived the trial court of the necessary subject matter jurisdiction to rule on the declaratory judgment claim it advanced. By contrast, we are constrained to quash Nationstar's appeal of the order granting summary judgment in *Sass I* (1067 WDA 2012), as the affirmative defense of rescission advanced in response to Nationstar's mortgage foreclosure action is not foreclosed by FIRREA, and was therefore within the ambit of the trial court's authority and discretion. Nevertheless, because Na-

tionstar failed to appeal that order within the mandatory appeal period, our Rules of Court now divest us of the jurisdiction to address the merits of that appeal.

Order granting summary judgment at 1066 WDA 2012 **VACATED.** Appeal at 1067 WDA 2012 **DISMISSED.**