J-A09035-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| D.K.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.L.C., A/K/A A.L.D. | : | |
| | : | |
| Appellant | : | No. 1287 WDA 2017 |

Appeal from the Order Dated August 8, 2017
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD 09-8227-005

BEFORE:  BOWES, J., DUBOW, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                         FILED MAY 25, 2018

A.L.D. (Mother) appeals from the custody order awarding primary physical custody of the parties' minor son, L.D. (Child), to D.K.D. (Father), partial physical custody to Mother, and shared legal custody to Father and Mother.  After careful review, we affirm in part and vacate in part.

In a published opinion, a prior panel of this Court summarized the relevant factual and procedural history of this case as follows:

> Mother and Father married [i]n March [ ] 2004, separated during 2009, and divorced in March [ ] 2015.  The family moved to the Pittsburgh area two years into the marriage.  The marital home was in Imperial, Pennsylvania.  Following the separation, Father, who currently works for the Federal Bureau of Investigation ("FBI") Joint Terrorism Task Force, moved approximately twelve miles from the marital residence to his parents' home in Burgettstown.  Until Mother moved to Florida during early 2015, she remained in the marital home with the parties' son[, Child], who was born of the marriage during February 2008.

> *       *       *

Meanwhile, following the marital breakdown, on July 1, 2009, Father filed a petition for divorce that included a count for custody of [Child]. The trial court entered a consent order that granted shared legal custody and awarded Mother primary physical custody. Father received periods of physical custody of [Child] for two hours on Tuesday and Thursday evenings and for three hours on alternating Saturday afternoons. The accord expressly limited the evening custody to the marital residence. While Father was authorized to exercise his custodial rights outside of the home during Saturday afternoons, in reality, Mother regularly objected to [Child] leaving the home with Father due to her concern that the disruption would be harmful to [Child's] condition.[1] Father generally acquiesced to Mother's demands and exercised weekend custody at the marital residence.

On September 25, 2014, Father filed a petition to modify the consent order. He sought larger periods of physical custody, more specific vacation and holiday schedules, and better enforcement of his custodial rights. Approximately one month later, Mother countered by issuing notice of her proposed relocation to Ocklawaha, Florida, so that she and [Child] could reside with her mother ("Maternal Grandmother").

Father opposed the proposed relocation, and the trial court held a two-day trial on the parties' respective petitions. Mother and Maternal Grandmother testified in support of the proposed relocation. Father testified on his own behalf and presented [Child's pediatrician], and his parents ("Paternal Grandparents") as witnesses. Following the testimony and review of the parties' proposed findings of fact, on March 20, 2015, the trial court denied Mother's proposed relocation. The trial court delineated the reasons for its decision, and addressed the ten relocation factors under 23 Pa.C.S. § 5337(h), reproduced infra. It found that the only factor that militated in favor of relocation concerned the anticipated enhancement to Mother's quality of life. The remaining factors, including consideration of [Child's] quality of life, either weighed against relocation, were determined to be

_____

[1] Child is diagnosed with Pervasive Development Disorder, a nonspecific descriptive diagnosis within the autism spectrum of developmental delays in two or more areas. D.K.D. v. A.L.C., 141 A.3d 566, 569 n.1 (Pa. Super. 2016).

neutral, or were inapplicable. In sum, the court reasoned, "While Mother demonstrated that relocating to Florida would enhance her general quality of life, she failed to meet her burden that relocation is in [Child's] best interest." Findings of Fact, 3/23/05, at 15.

In addition, the trial court granted Father's motion to modify the custody arrangement. It alleviated Mother's precondition that Father exercise custody at the marital home and fashioned a custody schedule that increased Father's periods of physical custody gradually over four months. The expansion culminated with Father exercising overnight custody on alternating weekends from Friday evening until Sunday evening. The court also outlined a defined custody schedule for [Child's] academic breaks, holidays, and summer vacation.

On April 8, 2015, Mother filed a motion for reconsideration and a motion for special relief. The motion for reconsideration noted that the trial court had not established a custody schedule in the event that Mother elected to relocate to Florida without her son. The concomitant motion for special relief informed the court that, while the court's decision was pending, Mother, who attained a Juris Doctor degree, had accepted a job in Florida as a claims assistant at the Department of Veterans Affairs and had devised an interim plan for Maternal Grandmother to care for [Child] in the marital residence while she began immediate employment. Mother continued that she intended to purchase a home in Florida in anticipation of the trial court's reconsideration of its denial of her prior petition for relocation. Specifically, she averred, "Mother plans to have a home purchased in the geographic area of her employer in which she and her mother will live, with, if the Court permits, the child." Petition for Special Relief, 4/15/15, at 3. Mother asserted that the employment offer was a significant factor that was not of record during the prior hearing and she contended that "other significant changes have occurred," which she failed to identify in the petition. Id. at 2. Mother requested that the court re-open the record to take additional evidence relative to her relocation.

Within the thirty-day period to appeal the March 23, 2015 custody order, the trial court granted Mother's motion to reconsider, reopened the record, and scheduled an evidentiary hearing for June 2015. In light of the court's decision to reopen the record, Father submitted a motion to amend his original petition for

modification in order to address Mother's acceptance of employment in Florida. The trial court granted Father's motion to amend. Thereafter, Mother issued an amended notice of relocation proposing to relocate with [Child] to Treasure Island, Florida, approximately two hours away from Maternal Grandmother's home. Again, Father opposed relocation.

On July 1, 2015, the trial court convened a third day of trial to address Father's amended motion for modification and Mother's amended relocation petition. Mother and Maternal Grandmother again testified in favor of relocation. Father and his parents testified in opposition to relocation and in favor of granting Father primary physical custody of the child in Pennsylvania. On August 3, 2015, the trial court issued amended findings of fact and entered a custody order granting Mother's request to relocate with [Child] to Treasure Island, Florida.

D.K.D. v. A.L.C., 141 A.3d 566, 569-571 (Pa. Super. 2016).

Father appealed and this Court reversed the trial court's decision to grant Mother's petition for relocation. See id. at 579-580. Specifically, we held that the trial court erred in its consideration of five out of the ten factors listed in 23 Pa.C.S.A. § 5337(h). Id. Accordingly, because the evidence demonstrated that the trial court's conclusions were unreasonable, this Court held that it was against Child's best interest to relocate to Florida. Id. at 580. Mother filed a motion requesting reargument and/or reconsideration, which this Court denied on July 28, 2016.

Thereafter, on August 12, 2016, Mother filed a motion to stay this Court's decision with the trial court. In her motion, Mother alleged that Child was thriving in Florida and that it would be "traumatizing for the child, emotionally and psychologically, to immediately reverse the existing custody or to remove the child from Mother. . . ." Motion for Stay, 8/12/16, ¶ 16.

That same day, the trial court denied Mother's motion to stay and issued an order of court awarding Father primary physical custody of Child. Child has resided with Father since August 2016.

On August 16, 2016, Mother filed a petition for modification of custody, requesting that the trial court award her primary physical custody and sole legal custody of Child. The trial court scheduled the matter for trial and entered an interim order detailing the terms of Father's primary physical custody and Mother's partial custody. A three-day trial commenced on August 4, 2017. Mother testified on her own behalf and presented the testimony of Maternal Grandmother; Angie Hadley, the children's director for Children's Ministry and the Christian play group at Mother's church; Anthony Biork, Child's scout den leader; Colleen Kilen, a member of Mother's church; Shakorya Hansen, Child's teacher at the YMCA after-school program; Sean Leonard, Mother's friend; and Dean Hoskin, the recreational director at Mother's church. Father also testified on his own behalf and presented the testimony of Child's paternal grandparents; and Dr. Joseph Greenberg, a clinical psychologist who conducted a psychological evaluation of Mother and Father. The trial court also conducted an in camera interview of Child.

At the conclusion of trial, the court orally denied Mother's petition to modify custody and awarded Father primary physical custody of Child. Mother was awarded partial physical custody of Child every weekend Child has off from school on a Monday or Friday. The trial court memorialized its findings in an order entered on August 8, 2017. Mother timely filed a notice of appeal

on September 7, 2017, along with a concise statement of errors complained of on appeal.

Mother presents the following issues for our review:

1. DID THE TRIAL COURT COMMIT AN ABUSE OF DISCRETION, A DISREGARD OF COMPETENT EVIDENCE, AND ERRORS OF LAW, IN NOT ACKNOWLEDGING THE RECORD OF THE SUPERIOR COURT DECISION AND ORDER, IN FAILING TO EXERCISE ITS OWN JUDGMENT AND LEGAL AUTHORITY IN THE IMPLEMENTATION OF THE SUPERIOR COURT ORDER, THEN IN ADDRESSING MOTHER'S MODIFICATION PETITION, RESULTING IN A DISREGARD OF THE BEST INTERESTS OF THE MINOR CHILD?

2. DID THE TRIAL COURT IN ITS INTERIM ORDERS, AND AUGUST 8, 2017, ORDER, ABUSE ITS DISCRETION BY APPLYING FACTORS IN A LIGHT MOST FAVORABLE TO FATHER, EXERCISED A GENDER BIAS AGAINST [MOTHER], MADE FINDINGS AGAINST [MOTHER] THAT WERE WHOLLY UNSUBSTANTIATED AND UNSUPPORTED BY COMPETENT EVIDENCE, WHILE FAILING TO CONSIDER THE MOTHER-SON RELATIONSHIP, [MOTHER'S] ROLE AS PRIMARY CARETAKER OF THE MINOR CHILD, AND, FATHER'S HISTORY OF CHRONIC NEGLECT OF THE CHILD?

3. DID THE TRIAL COURT COMMIT AN ABUSE OF DISCRETION AND ERRORS OF LAW IN ITS APPLICATION, AND LACK OF APPLICATION, OF THE BEST INTEREST FACTORS OF 23 PA.C.S.[A. §] 5328(A)(1)-(16) IN DENYING [MOTHER'S] MOTION TO MODIFY CUSTODY?

Mother's Brief at 6.

We address Mother's claim mindful of our well-settled standard of review:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual

- 6 -

determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

V.B. v. J.E.B., 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

The Child Custody Act (the Custody Act), 23 Pa.C.S.A. §§ 5321-5340, governs all custody proceedings commenced after January 24, 2011. E.D. v. M.P., 33 A.3d 73, 77 (Pa. Super. 2011). "The primary concern in any custody case is the best interests of the child." J.P. v. S.P., 991 A.2d 904, 907 (Pa. Super. 2010). "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral and spiritual wellbeing." Id.

In awarding custody, the Custody Act requires a trial court to determine the best interests of the child after considering all relevant factors, including certain statutory factors:

(a) Factors.--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party

and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

We have explained:

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." C.B. v. J.B., 65 A.3d 946, 955 (Pa. Super. 2013), appeal denied, 70 A.3d 808 (Pa. 2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." M.J.M. v. M.L.G., 63 A.3d 331, 336 (Pa. Super. 2013), appeal denied, 68 A.3d 909 (Pa. 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). Id.

A.V. v. S.T., 87 A.3d 818, 823 (Pa. Super. 2014).

In her first issue, Mother alleges that the trial court improperly considered this Court's prior decision when it denied Mother's petition to modify custody. Mother's Brief at 13-14. Mother asserts that it was error for the trial court to consider the Superior Court's decision, and that the trial court's error "resulted in the [t]rial [c]ourt becoming predisposed to rule against Mother, resulting in a disregard of [Child's] best interests." Id. at 14.

We find that Mother has waived this issue on appeal. Pennsylvania courts have long held:

> In order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue. On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. In this jurisdiction . . . one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

In re S.C.B., 990 A.2d 762, 767 (Pa. Super. 2010) (citations omitted). In this case, this Court's prior decision was referenced repeatedly throughout the subject proceedings by both Mother's and Father's counsel, and by the trial court. At no point did Mother object to the trial court's consideration of this Court's earlier findings or seek its admission for a limited purpose. Thus, this claim is waived. S.C.B., 990 A.2d at 767.

Additionally, Mother contends that the trial court erred in denying her motion to stay without conducting a hearing. Mother's Brief at 14-15. Mother's contention, however is beyond our jurisdictional mandate. Pennsylvania Rule of Appellate Procedure 903 requires that a party file an appeal "within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). As the 30-day period is jurisdictional in nature, it must be strictly construed. Sass v. AmTrust Bank, 74 A.3d 1054, 1063 (Pa. Super. 2013) ("Our Courts have reaffirmed on countless occasions that

timeliness is jurisdictional, as an untimely appeal divests this Court of jurisdiction to hear the merits of the case.").

Here, the order Mother complains of was entered on August 12, 2016. Accordingly, Mother had 30 days, or until September 12, 2016, to file a notice of appeal. As Mother is challenging this order now, over a year after the order became final, this contention is untimely. We therefore lack jurisdiction to address Mother's challenge to the trial court's order denying her motion to stay without a hearing.

Next, Mother asserts that the trial court's custody determination was made based on "gender bias against Mother." Mother's Brief at 25. Mother highlights four instances of perceived bias and asserts that the trial court's order should be reversed. Mother asserts: 1) the trial court failed to consider that Mother was Child's primary caregiver for over eight years and that Father has only had primary custody of Child since August 2016; 2) the trial court inquired into Mother's finances, but did not make the same inquiry for Father; 3) the trial court "boldly adopted" the belief that Mother moved to Florida out of her own desire and ignored testimony Mother had a job in her home state of Florida and that Father left Child when he was 18 months old to focus on his career; and 4) the trial court abused its discretion by awarding Mother less partial custody time with Child than Father received when Mother had primary physical custody of Child. Id. at 25-30.

In our prior decision, this Court rejected the same assertion raised by Father, and we reject the present claim for the identical reason, i.e., "the trial court's decision is . . . clearly not the product of gender-bias." D.K.D. v. A.L.C., 141 A.3d at 572. We stated:

> [G]ender-neutral custody considerations are well ensconced in Pennsylvania jurisprudence, and the Custody Law does not countenance presumptions between parents based upon gender or any other characteristics. See 23 Pa.C.S. § 5327(a) ("In any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular parent.").

Id.

We disagree with Mother's characterization of the trial court's analysis. In actuality, the certified record demonstrates that the trial court weighed all the facts presented, along with the statutory mandates, and concluded that it would be in Child's best interest to remain in Father's primary custody. As the notion that the trial court's determination was the product of gender-bias is baseless, no relief is due.

Mother's final issue presents a challenge to the trial court's application, and lack of application, of the best interest custody factors under Section 5328(a) of the Custody Act. Mother's Brief at 31. Mother takes issue with the trial court's findings with respect to factors 1-5 and 7-13. Id. at 32-56. Mother contends that the evidence of record does not support the trial court's decision to deny her request for primary physical custody. Mother challenges several findings made by the trial court and the testimony of Dr. Joseph

Greenberg, the clinical psychologist appointed by the court to perform a psychological evaluation of the parties.

The trial court issued its decision at the conclusion of the custody hearing on August 8, 2017, with consideration of the Section 5328(a) best interest factors. N.T., 8/8/17, at 32-62. Ultimately, the trial court concluded that Child's best interest would be served by awarding Father primary physical custody. In discussing the factors, the trial court noted that Mother and Father were equally capable of providing for Child and that Child is "thriving and equally connected to friends and activities in both environments." N.T., 8/8/17, at 39. However, the court expressed its concern that Mother was influencing Child's preference and was less likely to encourage contact between Father and Child. Id. at 32-38, 43-45.

Although the court is required to give "weighted consideration to those factors which affect the safety of the child," pursuant to 23 Pa.C.S.A. § 5328(a), we have acknowledged that the amount of weight a court gives any one factor is almost entirely discretionary. M.J.M. v. M.L.G., 63 A.3d 331, 339 (Pa. Super. 2013). Critically, as we stated in M.J.M.:

> It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case. See A.D. v. M.A.B., 989 A.2d 32, 35-36 (Pa. Super. 2010) ("In reviewing a custody order . . . our role does not include making independent factual determinations. . . . In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Our decision here does not change that.

- 13 -

Id. (emphasis added).

At their core, we interpret Mother's claims as disputes with the trial court's findings of fact and determinations regarding credibility and weight of the evidence. Mother essentially questions the trial court's conclusions and assessments and invites this Court to re-find facts, re-weigh evidence, and/or re-assess credibility to her view of the evidence. That is not our role as an appellate court. Under the aforementioned standard of review applicable in custody matters, the trial court's findings of fact and determinations regarding credibility and weight of the evidence may not be disturbed absent an abuse of discretion. See C.R.F. v. S.E.F., 45 A.3d 441, 443 (Pa. Super. 2012); see also E.R. v. J.N.B., 129 A.3d 521, 527 (Pa. Super. 2015). As we stated in King v. King, 889 A.2d 630, 632 (Pa. Super. 2005):

> It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . .

(quoting Hanson v. Hanson, 878 A.2d 127, 129 (Pa. Super. 2005)).

After a thorough review of the record, we find no abuse of discretion. The trial court exhaustively analyzed and addressed each factor under Section 5328(a). See N.T., 8/8/17, at 32-62. Its findings and determinations regarding the custody factors are supported by competent evidence in the record, and we will not disturb them. See C.R.F., 45 A.3d at 443; see also E.R., 129 A.3d at 527. To the extent Mother challenges the weight attributed

to any factor by the trial court, we likewise find no abuse of discretion. As stated above, the amount of weight that a trial court gives to any one factor is within its discretion. M.J.M., 63 A.3d at 339.[2]

Finally, Mother argues that the order awarding Father primary physical custody was unreasonable because it did not provide her with definitive periods of partial custody or additional time with Child during the summer and holidays. Mother's Brief at 22-24. We observe that the trial court failed to make a specific ruling regarding a summer vacation and holiday schedule in its August 8, 2017 order awarding Father primary physical custody of Child. Likewise, the custody order fails to consider that Child will not be able to attend extracurricular activities while in Mother's custody, as is required by paragraph six of the order. Accordingly, we vacate the order insofar as it does not establish a custody schedule for the summer months or holidays. We remand this matter to the trial court for the imposition of a custody schedule for the summer months and holidays, and if necessary, further evidentiary proceedings to create a summer custody schedule that will serve Child's best interests. Thereafter, the trial court shall enter a comprehensive, revised custody order that sets forth both a school year and summer custody

_____

[2] We note that, as previously stated, this Court's role is to determine "whether the trial court's conclusions are unreasonable as shown by the evidence of record." J.R.M., 33 A.3d at 650. Here, the certified record, including more than 600 pages of testimony, supports the trial court's findings. Accordingly, the trial court did not abuse its discretion.

- 15 -

schedule, mindful of the fact that Child may spend time with Mother in Florida and may not be able to attend extracurricular activities while in Mother's custody.

Order affirmed in part and vacated in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/25/2018