J-A04040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LAURA HORTMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CAMERON HORTMAN | : | No. 612 EDA 2020 |

Appeal from the Order Entered February 5, 2020
In the Court of Common Pleas of Chester County Domestic Relations at
No(s):  No. 2019-06481-PF

BEFORE:  STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    Filed: January 28, 2021

Laura Hortman (Wife) appeals from the order entered in the Court of Common Pleas of Chester County (trial court) dismissing her petition under the Protection from Abuse (PFA) Act, 23 Pa.C.S. §§ 6101-6122.  We affirm.

**I.**

Wife filed a PFA against her then-husband, Cameron Hortman (Husband), alleging that he abused her at their home on June 27, 2019. Husband, however, delayed the PFA hearing because he was charged with harassment for the incident.  After Husband was found guilty on summary appeal at a trial *de novo*, the trial court held the PFA hearing on December 30, 2019.

---

[*] Retired Senior Judge assigned to the Superior Court.

At the time of the incident, the parties had a pending divorce action but were living together and had been attempting to reconcile. That was the only fact upon which they agreed.

Under the Wife's version of the events, the following occurred. She and Husband dropped their son off at camp and returned home around 9:30 a.m. on the day of the incident. After returning, Husband told Wife that he wanted to finalize the divorce and that she needed to leave the house. Wife felt she should get to stay in the house with their son, especially since she had no other living arrangements. Husband disagreed and said he would rather leave the house vacant than have her live in it. When Wife refused to leave, Husband became agitated. Wife went room to room to get away from Husband, but he would follow her and stand in the doorways to the rooms she entered, forcing her to move around him. When Wife locked herself in their son's room, Husband used a key to enter. At one point, Husband even threw a roll of trash bags at her.

This went on until Husband called the police around noon. When the police arrived, Husband showed them a court order from the divorce proceedings that gave him possession of the house. Wife, however, showed them a superseding order. Upon seeing this, the police left. After they left, Husband told Wife that he was inviting his friend, Brian Applegate (Applegate), to intimidate her into leaving.

Before Applegate arrived, Wife tried to use the computer. As she was walking, Husband grabbed her left wrist and twisted it. He pulled her toward him and pushed her against the wall. Wife then called the police. After they arrived, Wife wrote a statement about what happened, but the police did not remove Husband from the house. Instead, they told the parties that they should both leave the house. Despite this exhortation, the parties stayed.

Applegate arrived around 3:00 p.m. Wife claimed that she wanted to leave but Husband and Applegate were standing near her car in the driveway. Afraid of what would happen if she tried to leave, Wife went upstairs and grew more scared when she discovered that Husband's firearm was not where it was supposed to be. Wife eventually left the house around 4:30 p.m.

Wife testified that her wrist was scratched and bruised because of Husband grabbing her. As a result, the day after the incident, she went to an Urgent Care and had to wear a wrist brace for two weeks. In support, Wife admitted photographs showing the scratch and bruising. Wife ended her testimony by alleging that Husband abused her during the prior year, stating that Husband would put his hands around her neck, shove her against the wall, and sometimes even choke and punch her.

In his testimony, Husband denied all allegations of abuse. He admitted that he asked Wife to leave the house but claimed that he did not do anything threatening to his wife. To rebut Wife's allegation about her wrist, Husband showed a video from the home's Ring video doorbell system. The video

showed Wife when she left the home. According to Husband's narration, Wife is holding several items in her left hand as well as between her forearm and abdomen. Wife also says hello to a neighbor and does not appear to be in discomfort.

Husband also denied inviting Applegate to intimidate Wife. Instead, Husband explained that he invited Applegate to help him move several items to his mother's house because Applegate had a truck. Applegate, called as a witness, confirmed that he went to the house to help Husband move and that Wife did not appear distressed when he briefly spoke to her.

Accepting the Husband's version of events over Wife's, the trial court dismissed the petition. After dismissal, Wife filed a motion for reconsideration that the trial court granted and ordered that the temporary PFA would remain in place pending Husband's response.[1] After receiving his response, the trial court denied reconsideration.

Wife then appealed raising the following three issues:

---

[1] When an appellant files a motion for reconsideration of a final order, appellant should file the notice of appeal simultaneously to assure the availability of appellate review should the trial court deny the petition or fail to grant it "expressly" within the 30–day appeal period. *See Sass v. AmTrust Bank*, 74 A.3d 1054, 1062 (Pa. Super. 2013). Because the trial court granted the motion for reconsideration within the 30-day appeal period, there is no jurisdictional issues with Wife waiting to file her notice of appeal until after the trial court denied reconsideration on February 5, 2020.

> A. Did the trial court improperly deny a PFA order based on the credible testimony of [Wife] that [Husband] abused [Wife] as defined by the [PFA] Act?
>
> B. Did the trial court improperly exercise its discretion by excluding evidence that would have supported a finding of abuse under the [PFA] Act?
>
> C. Did the trial court commit an [error of law] in excluding evidence relating to [Husband's] conviction for harassment under the same facts as the PFA?

Wife's Brief at 3.[2]

## II.

In her first issue, Wife asserts that the trial court erred in dismissing her PFA petition because "the weight and sufficiency of the evidence presented at the hearing" did not support dismissal. In her argument, Wife recounts her testimony about Husband's behavior during the alleged incident, asserting that Husband intended for her to fear for her safety so she would leave the house. She concedes that the trial court was free to weigh the evidence and make credibility determinations, but still argues that the trial court made unsupported factual findings. Wife emphasizes that Husband's testimony at the hearing was much more limited and less detailed than hers, skipping over or failing to address many of her allegations. She contends that Husband's lack of candor about the details of her allegations undermined his credibility.

---

[2] "In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." *E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa. Super. 2020) (citation omitted).

We first recognize that "[t]he purpose of the [PFA act] is to protect victims of domestic violence from the perpetrators of that type of abuse and to prevent domestic violence from occurring." ***Ferko-Fox v. Fox***, 68 A.3d 917, 921 (Pa. Super. 2013). "The PFA Act does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence." ***K.B. v. Tinsley***, 208 A.3d 123, 128 (Pa. Super. 2019) (citation and brackets omitted). A "preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, [enough] to tip a scale slightly." ***Raker v. Raker***, 847 A.2d 720, 724 (Pa. Super. 2004).

The PFA Act defines "abuse" as follows:

The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).[3]

---

[3] A person commits the offense of false imprisonment "if he knowingly restrains another unlawfully so as to interfere substantially with his liberty." 18 Pa.C.S. § 2903(a).

- 6 -

(4) Physically or sexually abusing minor children including such terms as defined in Chapter 63 (relating to child protective services).

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecution commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(a).

Despite her characterization of her claim as sounding in part in sufficiency, Wife's claim is essentially a weight-of-the-evidence claim. This being the case, we observe that "[c]redibility determinations are crucial components to any trial proceeding." *Ferko–Fox*, 68 A.3d at 924. "The trial court's ability to view the petitioner's facial expressions and mannerisms during the ... hearing is critical to an ability to render its credibility determinations." *Id.* As a result, on issues of credibility and weight of the evidence, we defer to the trial judge who viewed and assessed the witnesses in person. *Mescanti v. Mescanti*, 956 A.2d 1017, 1019-20 (Pa. Super. 2008) (citation omitted).

Even though she recognizes that we must defer to the trial court's credibility findings, Wife argues that her version of events was more believable because she provided more details about what happened. Nonetheless, the trial court was free to accept Husband's denials that he ever choked or punched her during the marriage or assaulted her on the day of the alleged

incident. *See* N.T., 12/30/19, at 42-44. In contrast to Wife's version, Husband testified that "everything was perfectly fine" on the day of the alleged incident. *Id*. at 53. If Wife felt his denials were inadequate, she was free to cross-examine him more in depth about her specific allegations about what happened.

Moreover, Husband presented corroborating evidence for his version. First, Husband called Applegate as a witness to rebut Wife's claim that Husband invited him to the house to intimidate her. Next, Husband admitted into evidence the doorbell video showing Wife when she left the house. The trial court found the video to be particularly important in concluding that Wife's version as lacking credibility.

> The Ring video is compelling and shows a woman who does not appear to be injured or in fear. [Wife] did not offer any explanation as to why her conduct on that video does not align with her testimony that she was frightened of [Husband and Applegate] inside her house. She had access to a neighbor, but simply says hello. She is outside of the house, but returns to it. [Wife] is nonchalant in the use of her arm. She does not appear to be protecting it. She does not appear to be in pain. This is not simply a case of she said, he said because we have a video that gives credence to [Husband's] version of events.

Trial Court Opinion, 3/17/20, at 7.

As summarized above, Wife's main complaint is that the trial court credited Husband's version of events over hers. In effect, she is asking us to substitute our judgment of the credibility of the parties for that of the trial court that heard the evidence and viewed the parties' credibility firsthand, which is something we cannot do. *See Mescanti, supra.*

**III.**

Next, Wife contends that the trial court improperly limited her testimony when she was asked what happened after the police came to the house the first time.

Q. Okay. What happened, if anything, after that?

A. [Husband] continued to chase me around the house. He was starting to blast heavy bass music in the house to the point of the walls were rattling. He was up – I was in the –

**THE COURT: Can we move this along to the point where it becomes a PFA?**

[Wife's Counsel]: Yes, Your Honor.

N.T., 12/30/19, at 9-10 (emphasis added).

Wife asserts that the trial court's interjection caused her counsel to cut short her line of questioning about not only the history of abuse between the parties, but also Husband's conduct on the day of the incident.[4]

Contrary to Wife's contention, the trial court did not exclude her from presenting any evidence. Instead, the trial court merely asked if she could get to the part where she claimed Husband abused her. If Wife's counsel felt that her line of questioning was necessary to set up the allegations of abuse,

---

[4] In general, the admission or exclusion of evidence is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion or an error of law. ***B.K. v. J.K.***, 823 A.2d 987, 991–92 (Pa. Super. 2004).

she was free to so inform the trial court and seek to present that evidence. Then, if the trial court excluded her from presenting that evidence, she could have preserved her objection under Pa.R.E. 103(a)(2) by providing an offer of proof about the substance of evidence that she wished to present.[5] Even if the trial court's instruction of "move it along" cut short relevant testimony, by failing to timely object, Wife has waived any claim that the trial court precluded her from presenting evidence.

Nor does Wife identify in her brief what evidence she claims the trial court excluded her from presenting, particularly about Husband's alleged history of abuse. Indeed, Wife testified later about Husband's alleged physical

_____

[5] Pennsylvania Rule of Evidence 103 governs the preservation of a challenge to a ruling to exclude evidence.

> Rule 103. Rulings on Evidence
>
> (a) Preserving a Claim of Error.
>
> A party may claim error in a ruling to admit or exclude evidence only:
>
> ...
>
> (2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.

Pa.R.E. 103. As a result, failure to timely object to the trial court will lead to waiver of the issue. **See Commonwealth v. Shamsud-Din**, 995 A.2d 1224, 1228 (Pa. Super. 2010) (stating that "in order for a claim of error to be preserved for appellate review, a party must make a timely and specific objection before the trial court at the appropriate stage of the proceedings; the failure to do so will result in waiver of the issue.") (citations omitted).

abuse of her from January to May 2018. N.T., 12/30/19, at 21-22. As a result, besides failing to object, Wife failed to identify what, if any, relevant evidence the trial court prevented her from presenting.

**IV.**

Finally, Wife claims the trial court erred in excluding evidence of Husband's summary harassment conviction for the same allegations in the PFA. Wife asserts that Husband's conviction should have "estopped" him from testifying at the PFA hearing and denying the abuse allegations. Collateral estoppel forecloses the relitigation of an issue of law or fact in a subsequent action when the legal or factual issues are identical, they were actually litigated, they were essential to the judgment and they were material to the adjudication. ***Columbia Med. Group, Inc. v. Herring & Roll, P.C.***, 829 A.2d 1184, 1190 (Pa. Super. 2003) (citation omitted). Wife then argues that application of the doctrine is appropriate because the offense of harassment under 18 Pa.C.S. § 2709 mirrors the definitions of abuse under the PFA Act.

Initially, Wife's claim that the trial court excluded her from presenting evidence about the conviction is incorrect. Wife testified over Husband's objection that he was charged with summary harassment and found guilty of that offense—first at the district court level, then in the trial court on summary appeal. N.T., 12/30/19, at 39-40. The trial court also stated that it considered the conviction in making his determination.

- 11 -

As to her estoppel argument, Wife never argued in the trial court that it should grant the PFA because Husband was convicted of harassment. At the PFA hearing, Wife's counsel noted the conviction on the record before testimony but never argued that the trial court should grant the PFA because of the prior harassment conviction. Likewise, Wife's counsel never objected to Husband being able to testify. Having failed to raise her estoppel argument in the trial court, Wife has waived the argument. *See* Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Not only did she did not raise this issue at trial, she did not specifically raise it as an issue in her 1925(b) statement.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/21