J-S01013-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  THE ESTATE OF KATHRYN S. MCLEOD, DECEASED  JOAN Y. SUMMY-LONG, INDIVIDUALLY AND AS AGENT FOR JANICE S. FAUST | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 394 MDA 2020 |
| NANCY MCLEOD O'BRIEN, EXECUTRIX OF DECEDENT'S ESTATE AND TRUSTEE OF THE KATHRYN MCLEOD TRUST U/A DTD 5/24/1999 | : : : : | |

Appeal from the Orders Entered January 30, 2020
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  2215-0133

BEFORE:   LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                                    **FILED MAY 04, 2021**

Joan Y. Summy-Long appeals, *pro se*,[1] from two orders, entered in the

Court of Common Pleas of Dauphin County, Orphans' Court Division, on

---

[*] Former Justice specially assigned to the Superior Court.

[1] Summy-Long purports to appeal "individually and as agent for Janice Faust," her sister.  Although Appellants were previously represented by counsel, he has since been permitted to withdraw his representation. **See infra** at 11-15.  Following counsel's withdrawal, Summy-Long, with the leave of this Court, filed a *pro se* supplemental brief.  This Court has previously held that an agent's *pro se* "legal representation" of a principal under a power of attorney is "contrary to the constitution, the laws, and the public policy of this Commonwealth" and constitutes the unauthorized practice of law. **Kohlman v. W. Pennsylvania Hosp.**, 652 A.2d 849, 853 (Pa. Super. 1994). Accordingly, to the extent that Summy-Long appears *pro se* in this matter, we

January 30, 2020. The first order denied Appellants' motion for reconsideration of an order dated May 30, 2019; the second order denied their objections to the Second and Final Account of Nancy McLeod O'Brien, Executrix of the Will of Kathryn S. McLeod, Deceased, and Trustee of the Kathryn McLeod Trust Under Agreement dated May 24, 1999. After our review, we quash the appeal from the order denying reconsideration of the order dated May 30, 2019. We affirm, in part, and reverse, in part, the order denying Appellants' objections to the Second and Final Account and remand for further proceedings.

This matter has a long and tortured history before both the Orphans' Court and this Court. In his Pa.R.A.P. 1925(a) opinion, the Honorable John J. McNally, III, provided a thorough recitation of the extensive factual and procedural history of this case, which includes excerpts from a prior memorandum decision of this Court. In the interests of judicial economy, as well as for ease of disposition, we reproduce that portion of the Orphans' Court's opinion in substantial part:

> The Pennsylvania Superior Court recited a portion of the early procedural background in this matter, as follows:
>
> > Kathryn S. McLeod died testate on December 18, 2014. On February 9, 2015, the Register of Wills [] of Dauphin County [] probated an instrument dated February 19, 2004, as decedent's last will and testament and granted letters testamentary to Nancy McLeod O'Brien [("Executrix")], [decedent's] stepdaughter. Appellants [] were decedent's

deem her to be acting only on her own behalf. However, for the sake of clarity, we refer to "Appellants" in the plural, when appropriate.

nieces. The residuary estate was left to the Kathryn S. McLeod Trust dated February 19, 2004 [("2004 Trust")].

The [2004 Trust], which constituted a complete restatement of a trust agreement dated July 27, 2001, was a living will whereby [decedent] appointed herself as trustee and retained a life estate. Upon [decedent's] death, the settlor's two stepdaughters, [Executrix] and Jean McLeod Croft, were appointed as successor co-trustees, and, after some specific bequests, [decedent] distributed the remaining ninety percent of the trust's assets to the two stepdaughters. Appellants each received five percent of the remainder of the trust assets. [Jean McLeod Croft, who was also named as a co-executrix under the will, declined to serve as either co-executrix or co-trustee. As a result, Executrix serves alone in both roles.]

After an attorney had entered an appearance on their behalf, Appellants filed a *pro se* document, which was directed to the Register of Wills and indicated that it was being filed to "meet the required legal deadline of being within one year of probation [sic] of the Will and is under consultation with attorneys at this time." There is no indication that the document was served on [Executrix]. The filing in question did not raise any issues as to the validity of the will or trust[,] nor did it suggest that the decedent lacked the capacity or was unduly influenced to execute those February 19, 2004 documents.

Instead, Appellants averred that there was tortious interference with their inheritance, and they sought subpoenas in order to obtain answers to "questions regarding the entirety of [decedent's] assets" as well as the disposition of assets held in 1992, 1997, and 1999 trusts created by the decedent. On March 9, 2016, the orphans' court dismissed the untitled document.

On March 17, 2016, counsel for Appellants filed a Petition to Contest Probated Will and Trust Agreement. That petition sought discovery to determine whether all of the decedent's assets had been located and whether decedent had executed a will and trust after February 19, 2004. Appellants also requested copies of any trusts that the decedent executed prior to 2001.

The executrix filed preliminary objections to the [petition], alleging that it was untimely, did not state a cause of action in that it did not contain any challenges to the validity of the February 19, 2004 will and trust, and was incapable of being answered. As to the latter averment, the executrix noted that the [petition] referred to wills and/or trusts that were supposedly executed after 2004, but that the document failed to apprise her of any facts that would enable her to locate testamentary dispositions signed after 2004. The executrix also set forth that, even though Appellant Summy-Long was the decedent's [agent under a] power of attorney for the twenty-five years preceding her death, Appellants did not list any assets that should have been, but were not, included in either the trust corpus or the estate.

After Appellants filed preliminary objections to the executrix's preliminary objections, the orphans' court entertained oral argument on October 17, 2016. On November 3, 2016, it dismissed Appellants' preliminary objections, granted the executrix's preliminary objections, and dismissed with prejudice Appellants' [petition]. The orphans' court concluded that the appeal from probate was untimely under 20 Pa.C.S. § 908(a), . . . and that the petition failed to state a claim that actually contested the validity of the will or trust.

**Estate of McLeod**[, 1960 MDA 2016 at 1-4 (Pa. Super. filed July 31, 2017) (unpublished memorandum decision)].

Following issuance of the order by the Hon[orable] Lori Serratelli, dismissing their preliminary objections, [Appellants] filed their appeal to the Superior Court. The primary issue presented was whether Appellants had adequately asserted a fraud exception which would allow them to challenge the validity of the will and/or trust beyond the one-year statute of limitations permitted for an appeal from the probate of a will [under section 908]. The fraud alleged by [Appellants] before the Superior Court "stems from the Executrix's failure to include between $1,000,000[ and ]$2,000,000 in assets of the Estate. This [is] based upon petitioner Summy-Long's personal knowledge." The Superior Court rejected the fraud claim because the averment "that there is certain property owned by the decedent that has not been included in the estate and/or trust assets . . . simply does not raise any valid challenge to the probate of the will or the integrity of the will or trust, much less the existence of fraud perpetrated

- 4 -

on the register of wills during probate." The Superior Court was critical of Appellants' decision to pursue their meritless appeal and improperly litigate collateral issues therein, stating:

> In fact, Appellants do not understand that the failure of the executrix or the co-trustees to account for assets actually owned by the decedent can be raised by objections to their accounts. Appellants also have no inkling of how to conduct discovery, which is **not** by means of filing an appeal from the probate of a will. Hence, the orphans' court did not abuse its discretion in concluding that [section] 908 applied and that Appellants had failed to state a valid cause of action in their [petition].

*Id.* [at 7 (emphasis in original)].

On November 13, 2017, following the Superior Court's decision, the Executrix and her attorney completed an accounting of the estate and 2004 Trust assets, including proposed distributions [(collectively, "Accounts")]. The [Accounts] were served on all interested parties and scheduled for audit on January 3, 2018. The petition for adjudication/statement of proposed distribution filed with the [Accounts] stated that the issues in the case involved distribution of the trust principal and termination thereof, discharge of the trustee and resolution of the issues listed in the rider, which included a statement by the estate that it intended to impose attorneys' fees [on Appellants], reasoning as follows:

> [Rider: Question 14]
>
> At the time of decedent's death, [Joan Summy-Long] was serving under decedent's power of attorney and also produced to the [executrix] of the estate the will of the decedent[,] which was duly admitted to probate.
>
> Ms. Long claimed that there was another will of the decedent and other assets than those which were probated. Counsel for the [executrix] took the necessary steps and no other assets nor another will has been found. Nevertheless, Ms. Long has caused the estate and trust to incur substantial legal fees and costs in raising the same issues before the Orphans' Court Division of Dauphin County and, after being unsuccessful there, the Superior Court of Pennsylvania[,] where she was also unsuccessful.

. . .

[Ms. Long] has also refused to sign a receipt and release agreement[,] which would have saved the expense and time of this proceeding. Accordingly, it seems only fair and proper that the costs of litigation, being legal fees and court costs[,] be charged in whole or in part to the shares now available for distribution to Ms. Long, individually and as attorney-in-fact.

The estate [stated] that it had incurred counsel fees of $156,002 and $43,345.50, respectively, or a total of $199,347.68 [sic] for the period from December 18, 2014 through October 31, 2017.

On January 16, 2018, [Appellants] filed objections to the Accounts. Also filed that same day was an entry of appearance of a new attorney for [Appellants], Ronald Finck[, Esquire]. [Appellants'] primary claims centered around Joan Summy-Long's belief that that the decedent might have established another trust during her lifetime besides the probated 2004 Trust, the ultimate disposition of which was unknown to her and [under which] she and her sister might be beneficiaries. [] Summy-Long also suggested that assets from other trusts might have been improperly co-mingled in the 2004 Trust when they should have remained separate for the sole benefit of [Appellants]. She asserted that the executrix refused to provide her with complete copies of the trust agreements dated 1993, 1997, 1999 and 2001. She also sought copies of decedent's account statement from the corporate trustees through which the various trusts were created, including the Hershey Trust Company and Edward Jones, which [Summy-Long] claimed she needed to determine whether the [Appellants] would be receiving that to which they were entitled.

Appellants raised six specific objections. The first and sixth were general objections to the [Accounts], reiterating the incomplete document history allegedly rendering the asset picture incomplete and suggesting executrix breached her fiduciary duty by failing to identify assets of the estate or improperly designated as assets of the estate assets of some other trust. These objections were raised "under the premise that it is appropriate for [the executrix] to proceed with the production of various statement, copies of the various trust documents, and other information through discovery proceedings, and to then reconcile the various entries on the [Accounts]." [Appellants] objected to any proposed distribution premised upon missing information that may not reconcile with the estate and the trust(s).

[Appellants] raised in the second objection that they believed decedent had an investment account with BNY Mellon which, on December 31, 2009, was claimed to have a value of $2,565,000 and that this account had been titled to the 1999 trust. [Appellants] had been unable to determine its disposition.

[Appellants'] third objection was that the executrix failed to distribute two pieces of heirloom jewelry bequeathed to Joan Summy-Long under the 2004 will []. Both pieces were missing from decedent's belongings and the estate had submitted insurance claims for the loss.

In [their] fourth objection, [Appellants] sought reimbursement of $2,887.47 for expenses incurred clearing out items [for them] from decedent's last residence.

In the fifth objection, [Appellants] disputed the executrix's proposal to charge attorneys' fees totaling $199,347.68 against their distribution. They also objected to the reasonableness of the fees. [Summy-Long] disputed the executrix's characterization that [Appellants'] prior litigation contesting probate was baseless and unnecessarily costly. [Appellants] also disputed that they caused unnecessary counsel fees by failing to agree to a release.

[The] court thereafter issued a number of case management orders[,] including a discovery deadline of June 30, 2018. During this time, while the objections were pending, executrix's attorney conferred with the Hershey Trust Company regarding decedent's assets[,] even though he believed that the documents sought by [Appellants] were irrelevant. On April 25, 2018, he provided [Attorney Finck] with a letter from the Hershey Trust Company confirming there were no trusts . . . that were not previously known or disclosed. Thereafter, executrix's attorney obtained from the archives of the Hershey Trust Company complete copies of the 1999 will and trust, and the 1997 trust, which were sent to Attorney Finck.

On October 26, 2018, Attorney Finck filed a petition to withdraw from representation of [Appellants] because he and Joan Summy-Long had "reached an irreconcilable impasse regarding case strategy." On November 19, 2018, Summy-Long filed a lengthy response objecting to the petition to withdraw. In it, she characterized her attorney as refusing to investigate fraud in the [Account]. She claimed that the impasse arose because Attorney Finck, without explanation, refused to depose a Hershey Trust Company officer whom she believed had detailed knowledge of

the wills and trusts executed by decedent under the trust officer's co-direction with decedent's attorney. She believed a deposition would reveal that decedent's attorney had concealed documents necessary to validate the veracity of the [Accounts].

On November 26, 2018, [the] court granted Attorney Finck permission to withdraw and stayed all proceedings for sixty days to allow Joan Summy-Long to procure new counsel. She chose not to do so, however, and entered her appearance as a self-represented litigant on January 28, 2019. [The] court thereafter scheduled a hearing on the objections to the [Accounts] for May 16, 2019.

On April 26, 2019, executrix filed a motion *in limine* seeking to exclude from the hearing, on irrelevancy grounds, any and all estate planning documents predating the 2004 will and 2004 [T]rust. The motion noted that the recent discovery revealed there were no trusts discovered not previously known or disclosed and that executrix's attorney had provided this additional proof to Attorney Finck. Executrix additionally noted that [Appellants] had failed to produce any documents relating to allegedly missing or improperly assigned assets.

Executrix specifically argued that earlier wills and trusts were not relevant to the disposition of assets through the 2004 trust agreement because that trust was, on its face, the governing document, based upon the following record: (a) that the 2004 trust lineage established that it was an amendment and continuation of the line of trust referenced by the [Appellants] from 1993 to 2004[;] (b) that the Superior Court specifically held that the 2004 will and the 2004 [T]rust govern the disposition of decedent's assets[;] and (c) that the 2004 [T]rust specifically identifies the trust property as annexed in Schedule A, which identifies an Edward Jones account ending in 4118, the account listed in the executrix's [Accounts] for probate.

. . .

[] Executrix argued that the 2004 [T]rust defined the scope of its assets. Any prior trust documents, which were specifically amended and restated and rendered nullities by the 2004 trust agreement, would not tend to prove or disprove whether any assets are missing from the 2004 [T]rust, or whether any assets

- 8 -

in the 2004 [T]rust belong to any person or entity other than the estate or the 2004 [T]rust.

In [their] response to the motion *in limine*, [Appellants] disputed that the executrix had accounted for all assets but[,] instead[,] had actively concealed estate documents including the 2001 trust, preventing them access to important evidence that could contradict or challenge the proposed [Accounts,] including exposing possible fraud.

[Following argument, the court granted executrix's motion in *limine*, holding it would only consider the 2004 will and trust in determining the estate distribution. A hearing on Appellants' objections followed, at which Appellants presented no witnesses or documentary evidence,] but argued the same issues [] raised in [the] pleadings.

. . .

On May 30, 2019, [the] court entered an order approving the account, denying the objections . . ., and granting the accountant's petition for adjudication. With regard to [Appellants'] primary complaint, set forth in [the] first and sixth objections, in which [they] claimed the executrix breached her fiduciary duty by failing to identify assets or improperly designated as assets of the estate assets of some other trust, [the] court found "that the estate has made trust documents, statements[,] and other information sought by [Appellants] available to [them]. The court finds that distribution of principal and income that have been made have been for the direct benefit of the decedent's estate." The court also found, as to the second objection, that the estate made a complete and proper accounting of the BNY Mellon account.

Determinatively, [Appellants] failed to file an appeal within thirty days from the issuance of the May 30, 2019 order, which [they were] required to do to avoid waiver of the issues litigated. The next docket activity in this matter occurred [on] November 11, 2019, when Executrix filed her Second and Final Accountings with Petition for Adjudication and Statement of Proposed Distribution. The Second [Accounts] covered the period from November 1, 2017 through August 28, 2019, and addressed new items including the proposed distribution of additional bonds that had since been discovered. It also reflected the imposition of

attorneys' fees against [Appellants,] as had been approved by the court in its May 30, 2019 order. Under the proposed distribution, the 5% shares due [Appellants], of $115,934.43 each, were applied to attorneys' fees. The Second [Accounts] showed that the estate had incurred $181,236.11 in counsel fees for the second accounting period, which was in addition to the estate's counsel fees for the first accounting period, of $199,347.68.

On December 27, 2019, [Appellants] filed a "Motion for Reconsideration of Objections to First and Final Trust and Account Order," specifically requesting that the court reconsider the May 30, 2019 order approving the account and denying the [Appellants'] objections. On December 31, 2019, [Appellants] filed objections to the Second [Accounts]. Joan Summy-Long, who filed the motion and objections, was still self-represented.

In the motion for reconsideration, [Appellants] raised three issues[.] First, they sought that the court revisit the issue of whether the estate was forthright when it claimed it was not in possession of one of the rings bequeathed to Joan Summy-Long. They suggested new evidence had been discovered showing the estate was falsely claiming it lacked possession. Second, they also again accused Executrix of breach of fiduciary duty in [her] administration of the 2004 Trust and that additional assets were due to [Appellants] inasmuch as the 1999 trust, created in their favor, had been "co-opted" into the 2004 Trust. They took particular issue with the fact that the estate had not provided a copy of the 2001 trust and that a 1999 revision to a will had been concealed. Third, [Appellants] argued that the estate failed to adequately search for unclaimed property owned by Decedent[,] which was allegedly known to the estate to exist in 2015[,] including a life insurance policy and two other items. Summy-Long asserted that recent searches she undertook (in late 2019) revealed the existence of this property and that the executrix breached her fiduciary duty by failing to include them in the estate assets.

In the objections to the Second [Accounts], [Appellants] continued to raise issues with the trusts[,] including that the 2004 Trust was deficient because it was unfunded according to Edward Jones account documents and that the 2004 Trust improperly co-opted the 1999 trust. [Appellants] again accused Executrix of concealing documents and allowing [Appellants'] inheritance to be taken away from them. [Appellants] also objected to the imposition of attorneys' fees. Finally, [Appellants] argued that

- 10 -

Joan Summy-Long should have received the appraised value of the missing jewelry (rings) she was bequeathed instead of the insurance claim value. Notably, the objections raised no new arguments directed solely at the Second [Accounts], to which the objections purported to object.

On January 22, 2020, the Executrix filed preliminary objections to both of [Appellants'] filings[,] arguing that all issues raised were a rehashing of issues previously raised in the first set of objections and which were finally resolved by this court in its May 30, 2019 order. Inasmuch as no new issues have been raised, and because any attack on the old issues had to be raised within thirty days from the issuance of the May 30 order, all issues were waived and this court lacked jurisdiction to [consider] them.

On January 30, 2020, this court issued two orders from which [Appellants] currently appeal. The first denied reconsideration[,] stating that "[Appellants have] failed to present facts which the court did not gather during the hearing on objections or law that the court did not consider in rendering its decision."

In the second order, this court denied the objections to the Second [Accounts], stating that "[Appellants] simply rehashed objections to the First [Account,] which this court has rejected and further objects to counsel fees charged to the estate, the cost of which are, in part, attributable to [Appellants'] own filings." On February 25, 2020, [Appellants] filed a timely appeal from both orders issued January 30, 2020. Following [Appellants'] filing of their notice of appeal, a third attorney entered his appearance on their behalf and filed a [Pa.R.A.P. 1925(b) concise] statement of errors complained of on appeal.

Orphans' Court Opinion, 5/15/20, at 1-11 (footnotes, citations to record, and unnecessary capitalization omitted).

On March 20, 2020, Norman Perlberger, Esquire, entered his appearance in this Court on Appellants' behalf. On June 10, 2020, Attorney Perlberger filed a motion to withdraw from his representation of Appellants, stating that he had "reached a professional impasse with [Summy-Long], and . . . that all attempts to resolve or remove said impediment have failed."

Motion to Withdraw, 6/10/20, at ¶ 8. On June 10, 2020, Summy-Long filed a *pro se* document styled "Answer to the Motion for Leave to Withdraw and for Extension of Time with Request for Documents and Counsel Compromise," in which she disputed numerous averments made in counsel's motion and asserted that "withdrawal of [c]ounsel at this stage makes it virtually impossible to find another attorney to represent the Appellate [sic] that is essential to complete the [c]ase." Answer to Motion to Withdraw, 6/10/20, at ¶ 6. On June 22, 2020, Attorney Perlberger filed a "Sur-Reply to Appellant's Answer to Motion for Leave to Withdraw and for Extension of Time," in which he disputed certain claims made by Summy-Long in her answer and "rest[ed] on the [m]otion pending before the Court." Counsel's Sur-Reply, 6/22/20, at [2]. On June 29, 2020, Summy-Long filed an answer to counsel's sur-reply. On July 6, 2020, this Court issued a *per curiam* Order, denying counsel's motion without prejudice to his ability to seek relief in the trial court and granting Summy-Long an extension of time, until July 29, 2020, to file a brief and reproduced record. **See** Order, 7/6/20.

On July 6, 2020, Attorney Perlberger filed an "*Ex Parte* Motion for Reconsideration/Clarification of July 6, 2020 Ruling Re: Motion for Leave to Withdraw and for Extension of Time."[2] In that motion, Attorney Perlberger

---

[2] Counsel averred that he filed his motion for reconsideration *ex parte* so as not to prejudice his client by "serving opposing counsel with [the m]otion, or . . . providing Appellee with any damaging allegations" regarding Appellant. *Ex Parte* Motion for Reconsideration, 7/6/20, at ¶ 4. However, counsel stated that opposing counsel did not oppose his withdrawal. **See id.**

noted that he had been retained solely for purposes of representing Appellants on appeal and had not been involved in the Orphans' Court proceedings. Thus, he requested "clarification of why a motion in the court below would have any bearing on [his] duties . . . to this Court as [c]ounsel on appeal." *Ex Parte* Motion for Reconsideration, 7/6/20, at ¶ 3.B. Attorney Perlberger further averred that:

> Communications with [Summy-Long] to limit the grounds of appeal to a single issue which [counsel] believed had been preserved failed, and [Summy-Long's] insistence that [counsel] proceed with the filing of the [b]rief and [r]eproduced [r]ecord on *all issues*, created an irreconcilable conflict, which [counsel] determined under the Rules of Professional Conduct precluded further representation before this Court.

Id. at ¶ 3.D (emphasis in original). Summy-Long filed a *pro se* response to counsel's motion for reconsideration on July 15, 2020. On July 20, 2020, counsel filed a motion requesting an extension of time to file the Appellants' brief, as his motion for reconsideration had not been ruled upon, and his motion to withdraw—filed in the trial court pursuant to the July 6, 2020 order of this Court—remained pending. *See* Motion for Continuance, 7/20/20, at ¶ 3.

Subsequently, on July 27, 2020, counsel filed a motion to withdraw his motion for reconsideration/clarification, stating that he "is now prepared and intending to file [a b]rief and [d]esignated [r]eproduced [r]ecord by the deadline of this Court, i.e., July 29, 2020." Application to Withdraw Filing, 7/27/20, at ¶ 2. That same day, counsel also filed an "Application to Amend

Motion for Continuance," in which he advised this Court that Summy-Long had responded to his motion to withdraw filed in the trial court, and that the trial court would be scheduling a hearing on the motion "in due course." Application to Withdraw Filing, 7/27/20, at ¶ 3. Accordingly, counsel requested that this Court amend its briefing schedule to allow Summy-Long a period of 45 to 60 days from the entry of an order in the trial court to file her appellate brief. *See id.* at ¶ 4. By *per curiam* Order dated July 28, 2020, this Court granted counsel's motion to withdraw his motion for reconsideration/clarification and gave Summy-Long until September 28, 2020 to file her brief and reproduced record.

Attorney Perlberger filed a brief and reproduced record for Appellants on July 28, 2020. In the brief, counsel raised a single issue related to the Orphans' Court assessment of counsel fees against the Appellants' inheritance. Counsel stated as follows:

> Although the [Rule 1925(b)] statement raised five issues, after reviewing the complete record, including the transcript of the May 16, 2019 hearing, the motion *in limine* (& responsive papers) and order of May 16, 2019 (none of which had been provided to undersigned counsel when he undertook representation), the Rules of Professional Conduct [(]i.e., Rules 1.16(a)(1) & (a)(4), and Rule 3.3) dictate that only a single issue addressed in this brief had not been waived and precluded by the failure of Appellants to appeal from the May 2019 orders. With respect to Rule 1.16, undersigned counsel was denied a motion to withdraw; and thus, the submission of this brief on the single issue presented comports with undersigned counsel's professional responsibilities of candor toward the tribunal. Furthermore, the failure to file a timely appeal or receive leave of court to extend said period, does not permit the prosecution of issues by way of a concise statement

of issues complained of on appeal, not preserved thereby. Pa.R.A.P. 342.

Brief of Appellants, at 3 n.1 (unnecessary capitalization omitted).

On August 13, 2020, the Orphans' Court granted Attorney Perlberger's motion to withdraw, finding that counsel had "set forth more than sufficient evidence to support his claim that he and [Summy-Long] have reached a professional impasse, and such is an impediment to his continued representation." Orphans' Court Order, 8/13/20, at 1. In light of the Orphans' Court's ruling, on August 14, 2020, Attorney Perlberger filed an application in this Court, renewing his request to withdraw from his representation of Appellants.

Also on August 14, 2020, Summy-Long filed a *pro se* application for relief, requesting that this Court order Attorney Perlberger to file an amended brief including all five claims originally raised in Appellants' Rule 1925(b) statement. Attorney Perlberger responded that same day, requesting that the motion be denied on the basis that the raising of unpreserved issues would be a violation of his ethical responsibilities. On August 21, 2020, this Court issued a *per curiam* order granting counsel's motion to withdraw, directing Summy-Long to notify this Court of her intention to retain new counsel or represent herself on appeal, and giving Summy-Long until September 28, 2020 to file a supplemental brief either *pro se* or through newly-acquired counsel.

On August 24, 2020, Summy-Long filed a *pro se* response to Attorney Perlberger's response to her August 14, 2020 application requesting that counsel be ordered to brief all issues raised in Appellants' Rule 1925(b)

statement, as well as an answer to counsel's renewed motion to withdraw. On August 27, 2020, Summy-Long filed a *pro se* "Notification" in response to this Court's order of August 21, 2020, stating that:

> Appellant intends to continue searching for counsel to replace Mr. Norman Perlberger, Esq. If another counsel cannot be found, Appellant will serve as *[p]ro [s]e*, although not her desire or first intention. It is understood specialized legal counsel is necessary for meeting the rigors and required knowledge for an appeal to the Superior Court.

Notification, 8/27/20.

Also on August 27, 2020, Summy-Long filed a *pro se* "Motion for Reconsideration and for Extension of Time," requesting that this Court reconsider its August 21, 2020 order granting Attorney Perlberger leave to withdraw as counsel and further requesting an additional extension, until December 31, 2020, to file a supplemental brief. On September 15, 2020, this Court issued a *per curiam* order denying Summy-Long's application for reconsideration of this Court's August 21, 2020 order and granting her an extension of time to file a supplemental brief, either *pro se* or through newly-acquired counsel, until October 28, 2020.

On September 15, 2020, Summy-Long filed yet another *pro se* application for relief, styled as an "Update on Motion for Reconsideration and for Extension of Time." In that application, Summy-Long cited her sister's health problems and difficulties in retaining new counsel and requested that her briefing deadline be "further extended for preparation of the Supplemental Brief without legal representation which appears most likely." Application for

- 16 -

Relief, 9/15/20, at ¶ 5. By *per curiam* order filed October 9, 2020, this Court denied that request, and Summy-Long filed her supplemental brief that same day.

We begin by noting that:

Our standard of review of an orphans' court's decision is deferential. When reviewing an orphans' court decree, this Court must determine whether the record is free from legal error and whether the orphans' court's findings are supported by the record. Because the orphans' court sits as the finder of fact, it determines the credibility of the witnesses and, on review, this Court will not reverse its credibility determinations absent an abuse of discretion. However, this Court is not bound to give the same deference to the orphans' court's conclusions of law. Where the rules of law on which the orphans' court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree. Moreover, we point out that an abuse of discretion is not merely an error of judgment. However, if in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be manifestly unreasonable or the product of partiality, prejudice, bias, or ill will, discretion has been abused.

*In re Estate of Zeevering*, 78 A.3d 1106, 1108 (Pa. Super. 2013) (citations and quotation marks omitted).

In the brief filed on Appellants' behalf by Attorney Perlberger, counsel raises one issue for our review:

Did not the [Orphans' Court] err in awarding counsel fees and taxing [Appellants] with same, thereby virtually stripping them of their inheritances, without any itemization of professional services or affording [Appellants] a hearing to determine the correctness and appropriateness of said fees?

Brief of Appellants, at 3.

Appellants' claim stems from the Orphans' Court's order dismissing their objections to the Executrix's Second and Final Account, which Appellants timely appealed.[3]  Among numerous other objections, Appellants challenged the second assessment of attorneys' fees against their distributive shares of the trust.  The Orphans' Court summarily dismissed Appellants' objections, in their entirety, without holding a hearing.  On appeal, counsel concedes that Appellants have waived their right to challenge the fees assessed in the First Account because they did not appeal the court's May 30, 2019 order confirming that account.  However, counsel takes issue with the "burdensome and debilitating award of a second round of counsel fees" charged to the Appellants in the Second Account.  Counsel argues that there were no legal fees attributable to actions of the Appellants during the second accounting period and that the Orphans' Court erred in "us[ing] the prior actions or inactions of the [Appellants], that had been the underlying basis justifying the first award of counsel fees, to extend as an automatic justification for approving the second award."  Brief of Appellants, at 12.  Counsel argues that "[t]he enormity of the fees awarded on May 30, 2019 should have, at the very least, required of the estate that it provide adequate and credible evidence of

---

[3] The Orphans' Court order dismissing Appellants' objections "left no outstanding claims or parties remaining in the [] action" and is, accordingly, appealable as a final order.  **In re Nadzam**, 203 A.3d 215, 219 (Pa. Super. 2019).  **See also** Pa.R.A.P. 341(b)(1) ("A final order is any order that . . . disposes of all claims and of all parties[.]"); Pa.R.A.P. 342(a)(8) ("An appeal may be taken as of right from the following orders of the Orphans' Court Division: . . . An order otherwise appealable as provided by Chapter 3 of these rules.").

the incurring of nearly $200,000 [in] additional fees" and charging them to Appellants.

Executrix argues that Appellants' counseled brief "cites no legal authority which would support reversing the Orphans' Court's decision to approve [the] attorneys' fees assessment against Appellants[.]" Brief of Appellee, at 18. In addition, Executrix asserts that Appellants have waived any challenge to the assessment of counsel fees because it was included in the May 30, 2019 order confirming the First Account and, moreover, "although [Appellants] challenged the fee assessment *generally* (and lost on that issue following the hearing), they never challenged the reasonableness of the fees themselves[.]" *Id.* at 29. Executrix claims that Appellants "identify no place in the record where they challenged the rates or the total amount of the fees such that [Executrix] should have produced the [supporting] invoices[.]" *Id.* Finally, even if the claim is not waived, Executrix argues that the assessed fees were

> amounts the [e]state and [t]rust had previously paid to their counsel in the hopes of resolving the issues with [Summy-Long]. The [c]ourt found that such an assessment was reasonable under the circumstances and thus exercised its discretion to accept [Executrix's] evidence regarding [Appellants'] meritless litigation and fruitless demands for information, all of which drained hundreds of thousands of dollars of estate resources.

*Id.* at 36.

It is well-settled that a court "may require a party to pay another participant's counsel fees if the party's conduct during the pendency of the matter was 'dilatory, obdurate, or vexatious [.]'" *Brenckle v. Arblaster*, 466

A.2d 1075, 1078 (Pa. Super. 1983). It is equally well-established that, whenever there is an unsuccessful attempt by a beneficiary to surcharge a fiduciary, the latter is entitled to an allowance out of the estate to pay for counsel fees and necessary expenditures in defending himself against the attack. *In re Francis Edward McGillick Found.*, 642 A.2d 467, 472 (Pa. 1994).

However, an attorney seeking compensation for services and costs has the burden of presenting facts to support that claim. *Estate of Sonovick*, 541 A.2d 374, 376 (Pa. Super. 1988). The fees must be reasonable and based on actual services provided and not some arbitrary formula. *Estate of Preston*, 560 A.2d 160, 164 (Pa. Super. 1989). The primary responsibility for determining the reasonableness of attorney fees rests with the auditing judge. *Estate of Burch*, 586 A.2d 986, 987 (Pa. Super. 1991). In determining the reasonableness of attorney fees, Pennsylvania courts consider the following facts and factors:

> the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

*LaRocca Estate*, 246 A.2d 337, 339 (Pa. 1968).

Here, the Executrix is correct that Appellants have waived their right to challenge the fees that were assessed in the First Account and were

attributable to their frivolous and unreasonable conduct regarding the lineage of the trusts, allegedly unaccounted-for assets, and other unfounded accusations directed to the Executrix. The Orphans' Court made that determination in its May 30, 2019 order confirming Executrix's First Account, from which the Appellants did not appeal. *See* Pa.R.A.P. 342(a) (order confirming account, or authorizing or directing distribution from estate or trust appealable as of right); *see also* Pa.R.A.P. 342(c) (failure to challenge immediately appealable order constitutes waiver of all objections to that order; such objections may not be raised in subsequent appeal).

However, to the extent that Appellants challenge the amount of fees assessed against their distributive shares in the Second Account, we find that Appellants properly preserved that claim by raising it in their objections to the account and in their Rule 1925(b) statement. Specifically, in their *pro se* objections, Appellants specifically raised the issue of excessiveness as follows: (1) by "object[ing] to having their inheritance taken from them without charge to the McLeod family to pay for huge attorneys' fees totaling $231,868.86;" (2) by asserting that they had been "charged $115,934.43 each for excessive attorneys['] fees;" and (3) by asserting that "the $231,868.86 [in attorneys' fees] being charged by the [e]state is huge compared with approximately $80,000 paid by [*p*]*ro* [*s*]*e* [litigants] for legal representation." Objections to Second Account, 12/31/19, at 4, 5 (unnecessary capitalization omitted). Read together, we find these assertions raise a colorable claim that Appellants were

charged excessive fees, some of which may not have been attributable to their conduct.[4]

While we understand and even sympathize with the Orphans' Court's frustration with the conduct of the Appellants in this matter, where a claim is properly and timely raised by a litigant, due process requires a meaningful opportunity to be heard in a proceeding before a tribunal having jurisdiction of the cause. ***Com. Dep't of Transp., Bureau of Driver Licensing v. Clayton***, 684 A.2d 1060, 1064 (Pa. 1996). Here, Appellants timely challenged as excessive the fees assessed against their distributive shares and it was incumbent upon the court to require the Executrix to provide evidence substantiating those fees. ***Estate of Sonovick***, ***supra***. Accordingly, we are constrained to vacate the order dismissing Appellants' objections to the extent those objections asserted the excessiveness of the counsel fees assessed against Appellants' distributive shares, and we direct the Orphans' Court to

---

[4] Appellants also preserved the claim as follows in their Rule 1925(b) statement:

> The [Orphans' Court] erred in charging [Appellants] (and not the McLeods) with grossly excessive counsel fees for both estate administration and litigation, thereby stripping them of even the small fractional shares of the estate that were bequeathed in the unsupported instruments accepted by the court. Compounding this erroneous charge, only the McLeod sisters were reimbursed for so-called unused attorney[s'] fees.

Pa.R.A.P. 1925(b) Statement, 3/18/20, at ¶ 4 (unnecessary capitalization omitted).

hold a hearing to determine whether the fees were reasonable and properly attributable to Appellants' conduct.

Appellants raise the following additional issues in their *pro se* supplemental brief:

1. The [Orphans' Court] erred in denying the motion for reconsideration of the May 29/30, 2019 order, when [Executrix] failed to produce (as directed by the court) the July 27, 2001 trust (2001 Trust). The court erroneously accepted a purported letter allegedly from Decedent, without actual reference to the 2001 Trust, which addressed the removal of a corporate trustee from the May 25, 1999 KSM trust. Said motion for reconsideration was denied without hearing, despite [Executrix's] failure to produce a material and indispensable instrument, i.e. the 2001 Trust, even though it had been executed at [the] time of the July 27, 2001 letter provided by [Executrix]. In the absence of instruments that were created and maintained, the [Orphans' Court] failed to validate the express references in the 2004 trust agreement which obliquely (with no particularity) identified a purported amend[ment] and restatement of the July 27, 2001 trust agreement that was, without substantiation, stated as a "*continuation of the trust created by original agreement dated July 23, 1993, which has been amended or restated from time to time.*"

2. Did not the [Orphans' Court] err when it failed to recognize the estate's misrepresentation of the July 27, 2001 trust as being the May 25, 1999 KSM trust. This misrepresentation resulted in the erroneous approval of the first and second accounting, and an unsupported distribution of the May 25, 1999 trust assets[?]

3. Did not the [Orphans' Court] err in denying objections/motion for reconsideration, and in refusing to consider evidence documenting the failure to fund the February 19, 2004 trust while co-opting the May 25, 1999 KSM trust assets with distribution according to the 2004 will and trust, relying blindly on the unauthorized carryover of said assets in the Edward Jones account 336-10841-1-8 identified as Schedule A only in the 2004 [T]rust?

4. Did not the [Orphans' Court] err in failing in its fiduciary duty to enforce that of the [] Executrix to provide [Appellants] (which could not be obtained without the McLeod authorization, being ignored when demanded) the required information necessary to identify and collect their inherited non-probate[] assets of the estate, including life insurance and unclaimed property of the [Pennsylvania] state treasury department. In this way, [Appellants] have been again deprived of their rightful inheritance by the [Orphans' Court] failing to enforce the estate[,] act without favor, or discrimination, and do the best for all beneficiaries?

Supplemental Brief of Appellants, at 12-14 (emphasis in original; unnecessary capitalization and citations to record omitted).

We have reviewed the parties' briefs and the record in this matter, including this Court's prior memorandum decision dated July 31, 2017, and conclude that Appellants' remaining claims, as set forth in the *pro se* supplemental brief, are thoroughly and correctly disposed of in the opinion authored by Judge McNally. Specifically, the court properly concluded that issues related to the trust lineage and the production of documents related thereto—encompassed in issues one through three—are waived as a result of Appellants' failure to timely appeal the court's May 30, 2019 order confirming the First Account. **See** Orphans' Court Opinion, 5/15/20, at 15-17. Similarly, the fourth and final claim, relating to allegations that the Executrix failed to assist Appellants in identifying non-probate assets to which they were purportedly entitled—is waived for failure to raise the issue in objections to the First Account. **See id.** at 19. Because all of these issues relate to the May

- 24 -

30, 2019 order, which Appellants failed to timely appeal, we quash the appeal of the Orphans' Court order denying reconsideration of that order.[5]

Order denying reconsideration quashed. Order denying objections to Second Account affirmed in part and reversed in part. Case remanded for further proceedings in accordance with the dictates of this Memorandum.[6] Jurisdiction relinquished.

_____

[5] "[A] party may request the court to reconsider any order that is final under Pa.R.A.P. 341(b) or 342[.]" Pa.O.C.R. 8.2. **See also** 42 Pa.C.S.A. § 5505 ("[A] court upon notice to the parties may modify or rescind any order within 30 days after its entry . . . if no appeal from such an order has been taken or allowed."). "[T]he trial court may consider a motion for reconsideration only if the motion for reconsideration is filed within thirty days of the entry of the disputed order." **Haines v. Jones**, 830 A.2d 579, 584 (Pa. Super. 2003). The mere filing of a motion for reconsideration, however, is insufficient to toll the appeal period. **Sass v. AmTrust Bank**, 74 A.3d 1054, 1062 (Pa. Super. 2013). Moreover, an order denying a motion for reconsideration is not a final order and, thus, not appealable. **Cheathem v. Temple Univ. Hosp.**, 743 A.2d 518, 521 (Pa. Super. 1999).

Here, Appellants filed their motion for reconsideration of the May 30, 2019 order on December 27, 2019, more than six months after the entry of that order. As such, their motion was patently untimely and the Orphans' Court lacked jurisdiction to consider it. **Haines**, **supra**. Moreover, as Appellants did not timely appeal the order, **see** Pa.R.A.P. 903(a) (notice of appeal must be filed within thirty days of entry of order), we lack jurisdiction to consider the merits of their appeal. **See Commonwealth v. Capaldi**, 112 A.3d 1242, 1244 (Pa. Super. 2015) (Superior Court lacks jurisdiction to consider untimely appeals).

[6] Because Appellants were represented in this Court by counsel with respect to the issue of the attorneys' fees assessed against them in the Orphans' Court, we may grant relief to both Appellants on that claim. However, we reiterate that Summy-Long may only represent herself on a *pro se* basis. **See supra** at n.1. Should Janice Faust wish to pursue her claim in proceedings on remand, she must either represent herself or retain counsel to act on her behalf.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 05/04/2021